UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| MICHAEL WEGRZYN,<br>*Plaintiff,*<br>v.<br>PETER MURPHY, *et al.*,<br>*Defendant.* | Civil No. 3:14-cv-406 (JBA)<br><br>August 29, 2017 |
|---|---|

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Michael Wegrzyn brings this action pursuant to 42 U.S.C. § 1983 against Defendants Peter Murphy, Gary Wright, Scott Semple, Correctional Officer Billie, Captain Beaudry, Correctional Treatment Officer Massoia, Captain Harnett, and Lieutenant Roy, alleging negligent breach of duty to protect, negligent denial of medical treatment, and retaliation for filing a lawsuit. Each Defendant has been sued in both individual and official capacities. Defendants now move [Doc. #122] for summary judgment on the Second Amended Complaint in its entirety. For the reasons set forth below, Defendants' Motion is GRANTED.

**I.    Facts**

Plaintiff Michael Wegrzyn's claims relate to allegations of events that occurred while he was incarcerated at MacDougall Correctional Institution ("MacDougall") in Connecticut and are brought against Peter Murphy (warden at MacDougall), Gary Wright (deputy warden at MacDougall), Scott Semple (warden at Garner Correctional Institution ("Garner")), Mr. Harnett (captain at MacDougall), Correctional Officer Billie, Captain Beaudry, Correctional Treatment Officer Massoia, and Lieutenant Roy.

Mr. Wegrzyn's wide-ranging complaint alleges deliberate indifference to three assaults committed by a fellow inmate, denial of medical treatment by John and Jane Does, as well as by

Defendant Roy, and retaliation for filing a lawsuit (the "Initial Lawsuit") on March 3, 2011 (served May 13, 2011), by means of the assaults and through a strategy of deliberate transfers between institutions and cells. Mr. Wegrzyn swore to his first complaint, thereby qualifying it as a verified complaint and permitting the Court to treat it as an affidavit for summary judgment purposes. (*See* Complaint, Part I [Doc. # 2] at 6). *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995). This first, verified complaint will be referred to as the "Wegrzyn Affidavit."

In opposing Defendants' Motion for Summary Judgment, Plaintiff has not supplemented his affidavit with any further evidence. Defendants have submitted documentary evidence and affidavits from non-party witnesses that contradict the factual assertions in Mr. Wegrzyn's affidavit. In determining whether Plaintiff has raised any material issues of fact requiring trial disposition, the Court proceeds under the principle that a party's affidavit, unsupported by any other evidence in the record, fails to raise a triable issue of fact when it conflicts with uncontroverted documentary evidence. *Christiana Bank & Trust Co. v. Dalton*, No. 06–CV–3206, 2009 WL 4016507, at *4 (E.D.N.Y. Nov. 17, 2009) ("a self-serving, contradictory affidavit fails to raise a triable issue of fact when it conflicts with documentary evidence"); *see also Henderson v. Wells Fargo Bank, N.A.*, No. 13-cv-378, 2017 WL 731780 (D. Conn. Feb. 2, 2017); *Dzanoucakis v. Chase Manhattan Bank, USA*, No. 06-cv-5673, 2009 WL 910691 at *8 (E.D.N.Y. Mar. 31, 2009) (where the "uncontroverted record clearly supports a [particular] finding," then "[p]laintiff's own self-serving declaration to the contrary is insufficient, under the circumstances, to raise a triable issue of fact").

Plaintiff's affidavit sets forth the circumstances of the first alleged assault, claiming that on April 24, 2011 Defendant Officer Billie opened Plaintiff's cell door and instructed Inmate Daniel Klimas to ask Plaintiff "why he filed the lawsuit?" before assaulting him. (Wegrzyn Aff. ¶ 4.) After

the assault, Officer Billie told Plaintiff, "this is how we do things in MacDougall." (*Id.*) Plaintiff then claims he was taken to the medical department where his requests for medical attention and a keep-away order were denied. (*Id.* ¶ 5.) Plaintiff repeated this request in the next few days. (*Id.* ¶¶ 6-7.) The affidavit also claims a second assault occurred on May 24, 2011, during which Defendant Billie again opened Plaintiff's cell door and instructed Mr. Klimas to enter and assault Plaintiff. (*Id.* ¶ 22.) Plaintiff again asked for medical treatment and issuance of a keep-away order, and was again refused. (*Id.* ¶ 24.)

A third assault is alleged to have occurred on October 24, 2011. (*Id.* ¶ 28.) According to Plaintiff, this assault took place in similar fashion to the other two: Defendant Billie opened Plaintiff's cell and Mr. Klimas entered the cell to assault Plaintiff. (*Id.*) This time, however, no one said anything. (*Id.*) Plaintiff asserts that he was taken to the medical unit where he again requested to file charges against Mr. Klimas and to file a grievance, but the doctors refused.

The documentary evidence submitted by Defendants shows that the first two assaults could not have taken place because Mr. Klimas and Plaintiff were not housed in the same facility on those dates. (Ex. D ("O'Neill Aff.") to Mot. Summ. J. [Doc. # 122-6] at ¶ 23; Ex. E ("Wegrzyn RT60") and Ex. F ("Klimas RT60") [Docs. ## 122-7, 122-8].)[1, 2] If these assaults could not have taken place in

---

[1] An RT60 is a prison record maintained by the Department of Corrections that shows which facility an inmate is assigned to and records all transfers between facilities. (O'Neill Aff. ¶13.)

[2] Plaintiff has not claimed that he was assaulted by someone else. In his Opposition, he maintains that he may be mistaken about the dates, but he offers no alternative account for when the assaults could have taken place and he offers no evidence that they took place on some other date. Further, the sequencing of events—Plaintiffs' allegations that he was assaulted by Mr. Klimas before being transferred to Garner Correctional Institution—cannot be made to fit with the records of Plaintiff's transfer between institutions, further demonstrating that even if he were mistaken about the dates, no reasonable jury could conclude the first two assaults occurred.

the timeframe and location that Plaintiff claims, then the retaliatory comments accompanying the assaults likewise cannot be shown to have taken place, and any request by Plaintiff for a keep-away order against Mr. Klimas would be meaningless because they were not housed together.

Unlike the first two claimed attacks for which no credible evidence has been offered, the third confrontation undisputedly occurred. The prison records confirm that on October 24, 2011, Plaintiff and Mr. Klimas engaged in a physical fight, but that the fight was documented to have taken place during "pod recreation," not in Plaintiff's cell. (Ex. G ("Cassidy Aff.") to Mot Summ. J. [Doc. # 122-9]; Ex. H ("Incident Report") to Mot. Summ. J. [Doc. # 122-10].)[3] After non-party Officer Cassidy reported the fight, responding staff including Defendant Billie came and secured the unit and both inmates. (Cassidy Aff. ¶¶ 6-7.) Aside from Defendant Billie, no other Defendants were on the scene and none of the other Defendants responded to the call. (*Id.* ¶21.) That same day, an Inmate Separation Profile was created to ensure Plaintiff and Mr. Klimas remained separated and Plaintiff was transferred to a different cell in the S unit.[4] (*Id.* ¶23.)

---

Plaintiff claims he was assaulted once on April 24, 2011, before being transferred to Garner and states that he was transferred to Garner "on May 12, 2011." The Department of Corrections record indicates that Plaintiff was transferred to Garner on August 3, 2011. Even accepting that Plaintiff is incorrect about the dates, but that the assault occurred before the transfer, the claimed assault by Mr. Klimas cannot have taken place because Mr. Klimas was not in the same facility as Plaintiff prior to August 3.

[3] Defendant's 56(a)1 Stmt. refers to Officer Cassidy "calling a code," which defense counsel explained at oral argument was a radio report seeking assistance from officers in the area.

[4] An Inmate Separation Profile is a record specifying the need and reason for keeping two or more individuals apart from each other. (56(a)1 Stmt. ¶22.) Once an Inmate Separation Profile is approved, it results in complete physical separation while the inmates are incarcerated. (*Id.* ¶24.) This is typically accomplished by housing the inmates in different Department of Correction Facilities. (*Id.*) Where special management practices require housing at the same institution (i.e. Administrative Segregation, Security Risk Group) then the inmate will be housed in different

4

With respect to the one fight shown to have occurred between Mr. Klimas and Plaintiff, the record does not support Plaintiff's claim that Officer Billie instructed Mr. Klimas to assault Plaintiff. Officer Billie's affidavit (which also is deemed a self-serving affidavit because he is a party) declares that before Officer Cassidy called the alarm in response to the fight on October 24, 2011, "I did not know that the two inmates would fight or that they had problems with one another . . . ." (Ex. J ("Billie Aff.") to Mot. Summ. J. [Doc. # 122-12] ¶¶ 4-5].) Plaintiff offers no rebuttal other than his discredited allegations about Mr. Billie's role in two prior fights.

In addition to Officer Billie's affidavit, non-party Scott O'Neill, a correctional counselor for the Connecticut Department of Corrections, submitted an affidavit stating that "if either inmate raised concerns about safety that information would be documented in their Department of Correction file and an inmate separation profile would be initiated" and that "there is no indication in either inmate's Department of Correction file that an inmate separation profile was warranted prior to October 24, 2011." (Ex. D ("O'Neill Aff.") to Mot. Summ. J. [Doc. # 122-6] ¶¶ 21-22.) The inmate separation profile created after the fight indicates that the fight occurred because of gang disputes. (Ex. I ("Inmate Separation Profile") to Mot. Summ. J. [Doc. # 122-11].)

Plaintiff's affidavit further claims that he was transferred between correctional facilities seven times between April 21, 2011 and October 31, 2011, and that he was transferred at least 10 times between cells during that same period. The prison records submitted by Defendants contradict these claims and show that he was transferred between facilities four times in 2005, once in 2010, and three times in 2011 after filing the Complaint. (Ex. E ("RT60 Movement Record") to Mot. Summ. J. [Doc. # 122-4].) In 2010 and January 2011, before the lawsuit was filed, Plaintiff was

---

physical housing units and the movement is controlled and a separation list is generated and distributed to custodial staff to ensure separation. (*Id.*)

5

transferred among cells nine times, and after the lawsuit was initiated, he was transferred between cells another five times. (Ex. B ("Locator Card") to Mot. Summ. J. [Doc. # 22-4].)

## II. Discussion

Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

Plaintiff brings his claims under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. To state a claim for a Constitutional violation under § 1983, a plaintiff must "allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the

Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Section 1983 does not create any independent substantive rights but rather is a vehicle to "redress . . . the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

In this Circuit "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (citation omitted)). "In the context of a § 1983 action, personal involvement means 'direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates.'" *Barrett v. Armor Correctional Health, Inc.*, No. 13-cv-1063, 2014 WL 1220756, at *5 (E.D.N.Y. March 20, 2014) (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)). A complaint asserting a § 1983 claim which does not allege facts establishing personal involvement "fails as a matter of law." *Gaines v. Armor Health Care, Inc.*, No. 12-CV-5663, 2013 WL 6410311, at *3 (E.D.N.Y. Dec. 9, 2013) (citing *Costello v. City of Burlington*, 632 F.3d 41, 48–49 (2d Cir. 2011)).

### A. Count One: Breach of Duty to Protect

Defendants move for summary judgment on Count One, arguing that the allegations are insufficient to show a violation of Plaintiff's Eighth and Fourteenth Amendment rights.

#### 1. Fourteenth Amendment

In the first count, Plaintiff claims that the Defendants violated his Fourteenth Amendment rights by (1) failing to prevent Mr. Klimas from attacking him; (2) failing to prevent Mr. Klimas from entering his cell; (3) instructing Defendant Billie to physically threaten and intimidate the plaintiff; (4) instructing Mr. Klimas to intimidate and to assault the plaintiff, (5) denying the

plaintiff an opportunity to file a grievance, (6) denying the plaintiff a keep-away order, (7) purposefully placing the Plaintiff in a cell where Mr. Klimas could assault him, and (8) failing to prevent the Plaintiff's injuries.

Fourteenth Amendment substantive due process protections are "limited to governmental action that is arbitrary . . . conscience-shocking . . . or oppressive in a constitutional sense . . . but not against government action that is incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d. Cir. 1994); *see Emmerling v. Town of Richmond*, 434 Fed. Appx. 10, 12 (2d. Cir. 2011) (affirming dismissal of a substantive due process claim when plaintiff "failed to allege any behavior . . . that could be reasonably considered egregious, outrageous or conscience-shocking."); *Dellutri v. Village of Elmsford*, 895 F.Supp.2d 555, 574 (S.D.N.Y. 2012) (dismissing without prejudice a claim where "[t]he conduct alleged by Plaintiff simply does not rise to the level of being so outrageous as to violate Plaintiff's substantive due process right.").

While Plaintiff's allegations that a prison guard directed a fellow inmate to assault him on three separate occasions, if true, would shock the conscience, there is simply no credible support for this allegation. The record submitted by Defendant shows that the first two claimed assaults could not have happened and confirms that while the third assault did occur, it was not at the behest of any of the Defendants. Further, the record does not support the allegation that the Defendants were aware of or indifferent to any risk posed by Mr. Klimas and shows that, after the fight took place, the two inmates were separated. Plaintiff's claim that he was denied the opportunity to file a grievance or obtain a keep away order related to fights he cannot show took place derivately lack any meritorious factual predicate.

2.   **Eighth Amendment**

Plaintiff also alleges that Defendants failed to protect him in violation of his Eighth Amendment rights. The Eight Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996). A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment and will give rise to a failure to protect claim. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). A prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes*, 84 F.3d at 620.

The test for deliberate indifference is twofold. First, Plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* at 620. Second, Plaintiff must demonstrate that the defendant prison officials possessed sufficient culpable intent. *Id.* This second prong involves a two-tier inquiry; a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm. *Id.*

Although Plaintiff claims that the Defendants failed to protect him from Mr. Klimas, there is no credible evidence to suggest that any Defendant had reason to know that a serious injury was likely to ensue following an interaction between Mr. Klimas and Plaintiff. The O'Neill affidavit supports the contrary conclusion—that there was no indication in either Mr. Klimas's or Plaintiff's file that they posed a danger to one another. (O'Neill Aff. ¶¶ 21-22.) Because there is no evidence that Defendants were aware of any risk or that they instigated the fight, no reasonable juror could conclude that any of the Defendants violated Plaintiff's Eighth or Fourteenth Amendment rights.

    **B.**    **Count Two: Negligence**

In his Complaint, Plaintiff alleges that Defendant John and Jane Does were negligent for denying Plaintiff adequate medical treatment. The Court has dismissed these claims because the John and Jane Does were neither identified nor served. One lone claim remains: that after the first assault by Mr. Klimas, Plaintiff was moved to a segregated housing unit where he was injured by a John Doe defendant and then refused medical treatment by Defendant Roy both for the injuries to his arm and from the first assault by Mr. Klimas. (Wegrzyn Aff. ¶¶ 15-16.) The record establishes, however, that Mr. Wegrzyn was not in segregated housing at the time claimed and there is no evidence that Mr. Klimas assaulted Plaintiff. No reasonable juror could conclude that Mr. Roy refused Plaintiff treatment for an assault that did not occur or in a housing unit where Plaintiff was not incarcerated.

C. **Count Three: Retaliation in Response to a Section 1983 Lawsuit**

Plaintiff claims that Defendants retaliated against him by repeatedly moving him between different correctional institutions and cells and by directing Mr. Klimas to assault him. (*See* Am. Compl. at ¶¶44-46.)

To state a claim for retaliation, the plaintiff must allege facts demonstrating "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennet v. Goord*, 343 F.3d 133, 137 (2d. Cir. 2003). If the plaintiff carries that burden, the defendants must show by a preponderance of the evidence that they would have taken the challenged action "even in the absence of the protected conduct." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

A plaintiff seeking to defeat a motion for summary judgment must show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial. *Colon*, 58 F.3d at 872. "Prisoners may rely on

circumstantial evidence to prove their retaliation claims, such as temporal proximity of events, but in doing so, the plaintiff also must usually provide some non-conclusory evidence that raises an inference of 'retaliatory animus' in order to proceed to trial." *Parks v. Blanchette*, 144 F. Supp. 3d 282, 331 (D. Conn. 2015).

Prisoners have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. June 28, 1995). Plaintiff filed his Initial Lawsuit in Federal Court on March 3, 2011, with service effectuated May 13, 2011, (Ex. A ("Initial Lawsuit Docket") to Mot. Summ. J. [Doc. # 122-3]) which satisfies the first prong of the inquiry.

The open question at this stage is whether Plaintiff has raised a material issue of fact that his exercise of "[protected] conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennet*, 343 F.3d at 137.

1. Movement among cells and facilities

Plaintiff claims he was moved between cells and facilities in a deliberate attempt to harass and disorient him. Plaintiff states that he was never previously subject to numerous moves among cells or facilities before filing the Initial Lawsuit and that the movement among cells and facilities that occurred after May 13, 2011 was in retaliation for the Initial Lawsuit. (Pl. Opp. at 14.)

As discussed earlier, the prison records contradict Plaintiff's claims about the frequency and timing of his transfers, showing first that Plaintiff was not transferred between institutions as frequently as he claims and second that he was transferred between institutions just as frequently before he filed the lawsuit as after. Similarly, at MacDougall, Mr. Wegrzyn was transferred between cells more often before he filed the Initial Lawsuit than after. There is thus no temporal proximity between the filing of the Initial Lawsuit and the claimed retaliatory transfers. Beyond the claimed

11

temporal proximity, Plaintiff does not provide any evidence that his transfers were motivated by retaliatory animus.[5]

Plaintiff has not provided any evidence beyond conclusory allegations that Defendants were motivated by retaliatory animus in transferring him between cells or between correctional facilities, to oppose the motion for summary judgment. *See Dawes v. Walker*, 239 F.3d 489, 491-92 (2d. Cir. 2001).

### 2. Assault

Plaintiff claims that Defendants instructed Mr. Klimas to assault him on April 24, 2011; May 24, 2011; and October 24, 2011. The evidentiary record establishes that the first two fights could not have occurred as alleged. Plaintiff also alleges that on May 21, 2011, while he was incarcerated at Garner, Lieutenant John Doe told him to "just drop the lawsuit." *Id.* at ¶20. However, the undisputed prison records indicate that Plaintiff was incarcerated at MacDougall on May 21, 2011, not at Garner. (Wegrzyn RT60.)

While Plaintiff implies that the October 24, 2011 assault was also in retaliation for the Initial Lawsuit, he does not claim any connection to the Initial Lawsuit by any Defendant's acts or statements, and offers no other form of evidence connecting the October assault to the Initial Lawsuit. In light of this evidentiary record, no reasonable juror could conclude that Defendants instigated Mr. Klimas to assault Mr. Wegrzyn in retaliation for the Initial Lawsuit.

### III. Qualified Immunity

Defendants argue that they are entitled to qualified immunity. Qualified immunity protects officials in their individual capacity from "liability for civil damages." *Pearson v. Callahan*, 555 U.S.

---

[5] In fact, Plaintiff's Locator Card indicates that at least one of the cell transfers, on July 20, 2011, was done because of "threats on staff."

223, 231 (2009). Defendants are entitled to qualified immunity if (1) their actions did not violate clearly established law, or (2) it was objectively reasonable for them to believe that their actions did not violate such law. *Warren v. Keane*, 196 F.3d 330, 332 (2d. Cir. Nov. 16, 1999). There need not be a prior decision with the same facts in order for the plaintiff to show the existence of clearly established law. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Rather, officers can be held liable as long as they had "fair warning" that their conduct was impermissible. *Id*. The objective reasonableness test is met—and the defendant is entitled to immunity—if "officers of reasonable competence could disagree" on the legality of the defendant's actions. *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. Sept. 12, 1995). Having concluded that there is no material issue of fact as to whether Defendants retaliated against Mr. Wegrzyn because the two claimed retaliatory assaults could not have taken place, the October 24, 2011 fight has no retaliatory nexus, and the pattern of movement between cells and institutions show no retaliation, the Court need not reach the question of qualified immunity.

**IV.     Conclusion.**

For the foregoing reasons, Defendants' motion for summary judgment is granted. The Clerk is directed to close the case.

IT IS SO ORDERED.

/s/
Janet Bond Afterton, U.S.D.J.

Dated at New Haven, Connecticut this 29 day of August 2017.